# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------

SWATCH S.A. a/k/a SWATCH A.G.; and )
THE SWATCH GROUP (U.S.) Inc., )
            )
           Plaintiffs, )
            )   Civil Action No.:
v. )   Judge:
            )
NEW CITY INC. )
            )
           Defendant. )

------------------------------------------------------------

**CIV - HUCK**

**MAGISTRATE JUDGE SIMONTON**

**06 - 20162**

*NIGHT BOX FILED*

*JAN 20 2006*

*CLARENCE MADDOX*
*CLERK USDC / SDFL / MIA*

## COMPLAINT

The Plaintiffs, Swatch, S.A. a/k/a/ Swatch A.G. and The Swatch Group (U.S.) Inc., (collectively referred to as "Plaintiffs") bring this action to obtain redress and compensation for past and ongoing loss and damage sustained as a result infringement and unfair competition by Defendant, NEW CITY INC. ("Defendant"). As and for its Complaint against the Defendant, Plaintiffs hereby state and allege the following:

## PARTIES

1.     Plaintiff, Swatch S.A. a/k/a Swatch A.G. ("Swatch") is a corporation duly organized and existing under the laws of Switzerland, located at 94 Rue Jakob Stampfli, CH-25009 Bienne, Switzerland. Swatch is a manufacturer and seller of watches, watch parts, jewelry and electronics under a multitude of valid, subsisting, incontestable, famous registered and common law trademark including SWATCH, IRONY, SKIN, and DIAPHANE. Swatch also has valid copyright protection for the creative expression of its unique and original designs embodied in tangible form in the watches sold under the SWATCH brand.

2.      Plaintiff The Swatch Group (U.S.) Inc. ("TSG") is a corporation duly organized and existing by virtue of the laws of Delaware with its principal place of business at 1200 Harbor Boulevard, 7th Floor, Weehawken, New Jersey.

3.      TSG and Swatch are subsidiaries of The Swatch Group Ltd. of Bienne, Switzerland. The Swatch Group Ltd is the parent company of at least 18 major watch brands which it sells worldwide including OMEGA, LONGINES, TISSOT, BREGUET, and SWATCH (the "Swatch Group Brands").

4.      TSG is the exclusive distributor in the United States for the Swatch Group Brands and is responsible for maintaining the quality and good will of the respective trademarks and copyrights.

5.      TSG is the exclusive distributor of Swatch's goods, including those bearing the trademarks SWATCH, IRONY, SKIN and DIAPHANE sold in the United States. TSG only sells Swatch Group Brands in the United States itself or through appointed authorized retailers.

6.      On Information and belief, Defendant is a corporation duly organized and existing by virtue of the laws of the state of Florida with its principal place of business at 21 Southeast First Avenue, 4th Floor, Miami, Florida 33131.

7.      Upon information and belief Defendant New City Inc. is a watch distributor that solicits wholesale sales of watches including SWATCH brand watches.

8.      Defendant is not an authorized retailer or distributor for any goods bearing Swatch Group Brands.

2

## JURISDICTION AND VENUE

9.      On information and belief, Defendant has committed and is committing

acts of Copyright Infringement, Trademark Infringement and Unfair Competition under

common law and the Lanham Act, and Trademark Dilution under the Federal trademark

Dilution Act as hereinafter alleged, in this District, through displaying, selling, importing,

distributing, advertising, materially altering, diluting, tarnishing and using Plaintiffs'

copyrights and trademarks.

10.      This action is for Copyright Infringement, arising under the Copyright Act

of 1976, as amended (17 U.S.C. § 501 et seq.), Trademark Infringement pursuant to the

Lanham Act §32(1), 15 U.S.C. §1114(1)(a), Trademark Dilution under the federal

Trademark Dilution Act, 15 U.S.C. § 1125(c), Unfair Competition arising under the

Lanham Act §43(a), 15 U.S.C. §1125, and Trademark Infringement, unfair competition

and false designation of origin and false advertising arising under common law and the

laws of the State of Florida.

11.      This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and

1338 as it involves claims presenting federal questions under 15 U.S.C. §1121(a) (actions

arising under the Lanham Act have original jurisdiction in federal courts), 15 U.S.C.

§1114, §1125 and 17 U.S.C. §§101 *et seq.* (actions arising under the Copyright Act) and

15 U.S.C. . § 1125(c)(actions arising under the Trademark dilution Act).   This Court also

has supplemental jurisdiction over the asserted claim of common law trademark

infringement, unfair competition and false designation of origins and advertising,

pursuant to 28 U.S.C. §1367(a), because such claims are so related to those claims under

which the Court has original jurisdiction that it forms part of the same case and controversy under Article III of the United States Constitution.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events or acts giving rise to the claim occurred in this District, a substantial part of the property that is the subject of the action is situated in this District, and upon information and belief Defendants and their principals reside in this District. The acts complained of also have been and continue to be committed in this District.

## FACTS

### A. PLAINTIFFS' SALES , MARKETING AND DISTRIBUTION UNDER PLAINTIFFS' TRADEMARKS IN THE UNITED STATES

13.     Plaintiffs manufacture and distribute watches in the U.S. under the trademarks SWATCH, IRONY, SKIN, and DIAPHANE.  All of Plaintiffs' goods are manufactured in Switzerland.

14.     Plaintiffs are the owners of the entire right, title, and interest in Federal trademark registrations for goods and services, including, among others, the following famous, valid, subsisting, and uncancelled Federal trademark registrations:

| | |
|---|---|
| SWATCH | U.S. Trademark Reg. No. 1356512, 8/27/85 |
| SWATCH | U.S. Trademark Reg. No. 1849657, 8/9/94 |
| SWATCH SCUBA 200 | U.S. Trademark Reg. No. 1664054, 9/12/91 |
| IRONY | U.S. Trademark Reg. No. 1938930, 9/28/95 |
| SWATCH IRONY | U.S. Trademark Reg. No. 1942870, 12/19/95 |

4

and others. Copies of the Patent and Trademark Office's public recordings of these marks are attached as Exhibit A. These registrations are incontestable, as Plaintiffs have filed the required affidavit of incontestability pursuant to §15 of the Trademark Act, with the Commissioner of Patents and Trademarks.

15.     Plaintiffs are the owners of the entire right, title, and interest in common law trademarks, including, among others, SKIN, for which Plaintiffs have filed applications for registration, (U.S. Trademark Application Nos. 75/446,629, 75/427,586) and DIAPHANE. Herein all of the marks identified in paragraphs 14 and 15 will be collectively referred to as "SWATCH Marks."

16.     In the mid-seventies the Swiss watch industry was in the mist of the worst crisis ever to be recorded.  There was worldwide competition and many industry experts predicted the end of the Swiss watch industry.

17.     While others fled the market, in response, the Plaintiffs invested heavily into product development, technological advancements, market research, brand development, original designs and original works protected by copyrights law.

18.     Through these efforts the Plaintiffs came up with innovative and distinctive SWATCH brand watch designs. SWATCH brand watches incorporated major advancements.  First and foremost its modern colorful designs spoke to a whole new generation of potential watch purchasers.  Prior to Plaintiffs, watches were largely designed of metal and suggested utility. SWATCH brand watches were able to combine high quality fashion and consumer interest by taking a bold new approach.  For example, Plaintiffs developed new designs which allowed for the slim plastic watch to be manufactured using only 51 components (instead of the 91 parts more traditionally used.)

They also designed the watches to be fashionable and as a result a recurring seasonal purchase for consumer.  SWATCH brand watches are now collectables.  These revolutionary steps lead to the combination of high quality fashion at an affordable price. The first SWATCH brand watch went on sale in 1983.

19.     Since its 1983 debut the SWATCH brand watch has gone to become the most successful wristwatch of all time and Plaintiffs' parent company, The Swatch Group Ltd., is now the largest watch company in the world.

20.     SWATCH brand watches are continuously redesigned and further developed.  For example SWATCH brand watches are now available, in addition to the traditional plastic, in metals and with special features, for example: the IRONY (the metal SWATCH); the SWATCH SKIN Chrono (the world's thinnest chronograph); the SWATCH SNOWPASS (a watch with built-in access control function which can be used as a ski pass at many ski resorts throughout the world); and the SWATCH BEAT (featuring the revolutionary internet Time).

21.     Plaintiffs' have invested substantially in the SWATCH Marks in order to maintain their distinctive image in the marketplace.

22.     Watches bearing the SWATCH Marks have been advertised and promoted and otherwise used in commerce throughout the United States, including this District, since at least as early as 1983.  Advertising has been in print publications, including newspapers and upscale periodicals, sponsorship of events and television advertisement campaigns.

23.     The SWATCH Marks have thereby acquired a distinctiveness and secondary meaning signifying Plaintiffs and their products.  The public and trade have

come to rely on the Plaintiffs' trademarks to distinguish their products and services from those of others.

24.    Goods bearing the SWATCH Marks have created a buzz that have lead to SWATCH brand watch clubs, SWATCH brand watch museums and the public display of private SWATCH brand watch collections.  The SWATCH Marks are associated with cutting edge watch fashion.

25.    SWATCH brand watches have also developed an exceptional reputation for accuracy and technological advancement.  In fact, the Swatch was appointed to be the Official Timekeeper of the ATHENS 2004 Olympic Games; the 1996 Atlanta Centennial Olympic Games and the Sydney 2000 Olympic Games.

26.    Swatch is known throughout the world as an official athletic time keeper. For example, Swatch sponsors and keeps time for professional athletes such as the SWATCH ProTeam Volleyball Players.

27.    In order to enhance the public perception and to enhance the image of the SWATCH brand, TSG has opened a network of Swatch Stores throughout the United States based on the "SWATCH Jelly Fish" store concept.   The SWATCH Jelly Fish concept has been praised and applauded in the media and trade periodical.  The SWATCH Jelly Fish store concept includes: light columns that change colors to produce translucent effects, a high tech image and a polished floor plan, all of which give the SWATCH Jelly fish stores a feeling grandeur.

28.    These flagship stores have been referred to by third parties as creating an "eye-popping experience" "splendidly" designed and as a "sensory journey expounding Swatch's innovative and inventive spirits".

7

29.     Plaintiffs have established a network of these specially designed stores in the most prestigious addresses through the country. Locations include Time Square in New York, the Arlington Fashion Center in Virginia, Caesar's  Forum in Las Vegas and Union Station in Washington D.C.

30.     All of the SWATCH brand watch stores feature high tech displays, interactive light system and a polished appearance.  The images and exceptional service featured at the SWATCH Jelly Fish stores bolsters the SWATCH brand image.

31.     Plaintiffs invest substantial time and resources to enhance brand recognition, goodwill and customer perception of high quality and service through its flag ship SWATCH brand watch Jelly Fish stores.

32.     In keeping with Plaintiffs' image of quality, exceptional service, and creativity, TSG carefully selects and appoints authorized retail distributors in the United States.  Selected retail dealers must be able to maintain the positive, high quality image associated with the SWATCH brand. As the exclusive distributor of SWATCH brand watches sold in the United States, TSG only sells the SWATCH brand goods in the United States directly or through appointed authorized retailers.

33.     Authorized retailers are only appointed if they can properly represent the SWATCH brand and maintain the quality of service, presentation and goodwill which is associated with the Plaintiffs.

34.     Authorized retailers must satisfy criteria established by TSG prior to selection.  The criteria for appointment as an authorized retailer includes: location of the point of sale store, the condition and the aesthetics of the retail point of sale store and the clientele of the retailer.

35.     Authorized retailers are only permitted to sell Swatch brand goods from approved retail locations.  This requirement allows TSG to monitor, preserve and enhance the image of its brand and to safe guard against any dilution and tarnishing to its brand.

36.     Plaintiffs also provide warranty service for their goods sold through authorized retailers.

37.     Included in the packaging materials for all of its Plaintiffs' watches are warranty cards, valid only upon endorsement by authorized SWATCH brand dealers.

38.     Plaintiffs also provide written material with each SWATCH brand watch which includes watch specific information that allows Plaintiffs to track the origins of a specific watch and thereby ensure proper warranties.  This specific information is vital to protect warranties and the legitimacy of SWATCH brand products.

39.     Factory warranty service by trained, skilled watchmakers with thorough product knowledge is critical to the reputation of Plaintiffs as prime sources of goods made to exacting specifications in a very competitive market. Particularly when the goods are watches, which inherently must be perfect, delivering both an exclusive image and superior quality are paramount to a brand's success and its survival.

40.     Plaintiffs must be able to confirm both: the authenticity of each if their goods and the validity of every warranty for each of their watches.  Any act which prohibits Plaintiffs from making these determinations dilutes and tarnishes the SWATCH brand.

**B.  P<small>LAINTIFFS</small>' C<small>OPYRIGHTS</small>**

9

41.     Plaintiffs' are well-known as the source of distinctive and unique watches. Plaintiffs have created and authored these unique designs in Switzerland at the cost of substantial sums throughout the years. Such creativity is the hallmark of Plaintiffs' business and the cornerstone of their success.

42.     Creation, marketing and preserving of distinctive, consumer-identifiable designs and copyrights has been a key to Plaintiffs' success.

43.     Plaintiffs' creative works are featured in their watches, as part of the artwork of the dial, the design of the band, or unique watch bracelets. Plaintiffs' own copyrights in these creative works. Samples of Plaintiffs' copyrighted works are attached hereto as Exhibit B. (Hereinafter referred to as the "SWATCH Copyrights.")

44.     The only copies of SWATCH Copyrights that are intended to be sold in the United States are those imported into the United States by TSG as the exclusive United States licensee of the Swatch Marks and the Swatch Copyrights.  TSG sells these particular goods only to authorized dealers in the United States.

45.     Swatch also sells copies of Swatch Copyrights to distributors in other countries outside the United States.  Such sales are made pursuant to distribution agreements that restrict resale of the goods to specific geographic regions, including the United States.  Any goods sold by Swatch to any party other than TSG is not intended for importation into the United States or for resale in the United States.

46.     Plaintiffs have placed the public on notice of the copyright in their works by including a copyright notice (© Swatch S.A. or © Swatch A.G.) on each of its goods. Indeed, on such watches, Plaintiffs reserve their right of first sale under the copyright law. Importation and resale of such watches in the United States by any third party, other

than TSG, is unauthorized and unlawful and deprives Plaintiffs of their right of first sales in the United States.

### C. DEFENDANT NEW CITY INC.'S FLAGRANT UNAUTHORIZED IMPORTATION, SALE, AND DISTRIBUTION OF THE SWATCH COPYRIGHTS AND PRODUCTS BEARING THE SWATCH MARKS

47.     Defendant openly sells a variety of watches which bear SWATCH Marks and flagrantly broadcasts its willingness to distribute unauthorized goods. *See* New City Inc.'s website view at http://newcityinc.com.  Sample pages form New City's website offering SWATCH watches for sale are attached hereto as Exhibit C.

48.     A customer may browse New City Inc.'s web site and select SWATCH brand items for purchase. However, each buyer must fill out a price quote request form to receive a price quote.  There is a minimum sales order requirement of $ 1,500.00 for orders to be shipped in the United States and a minimum sales order requirement of $2,500.00 for product to be shipped outside the United States.

49.     Defendant explicitly acknowledges that it is "not allowed to sell [the watches] to the final consumer." *See*  http://newcityinc.com.

50.     Defendant in its website claims that each SWATCH brand watch sold by it is covered by a warranty to be "handled directly by the manufacturer." *Id.*

51.     Defendant promotes its unauthorized services in trade directories and at trade show. *See* New City advertisements, attached as Exhibit D.

52.     The SWATCH brand is one of only eight watch brands sold by Defendant and therefore the unauthorized sale of SWATCH watches constitutes a substantial portion of Defendant's sale of "millions" of products.

11

53.     Defendant is not authorized by Plaintiffs to sell any watches bearing the SWATCH Marks in the United States and has not acquired the goods from the Plaintiffs. Plaintiffs did not intend the watches being sold by the Defendant to be sold in the United States.

54.     The goods bearing SWATCH Marks which are sold by the Defendant were manufactured in Switzerland, contain copies of the works created in Switzerland, and were sold to distributors outside the United States with restrictions on resale within certain geographic regions.

55.     Upon information and belief, Defendant did not acquire the SWATCH brand watches from an authorized United States distributor or a dealer who is authorized to import the SWATCH brand watches into the United States.

56.     On its home page Defendant promotes itself as watch wholesaler specializing in the sale of eight watch brands including SWATCH.  Defendant boasts it is "one of the country's largest distributors of watches" with the sale of "millions of products to customers throughout the World since 1983".  *See* Website page attached as Exhibit C.

57.     On or about December 16, 2005, Plaintiffs, through the investigative services of Eric Berger, purchased a number of SWATCH brand watches from the Defendant. Specially, the purchased watches included five of each of the following watches models:

| Title | Swatch Number |
|---|---|
| MIDNIGHT BITE | YLB100G |
| EVERBLACK | SFB133G |
| RIP TIDE | SUGM102 |
| SPEED PEAK | SVCO4000 |

12

ANELLY E STELLE SFK244G

Additionally one each of the following watch models where purchased directly from the

Defendant:

| Title | Swatch Number |
|---|---|
| WHALE RIDE | SUGK100 |
| ICESTORM (Solid) | SVCK4002G |
| POWERIZED | SVCK4029AG |
| NIGHT TIME | SFN110 |
| COOL WEATHER | YMS1008AG |

Images of the watches purchased from Defendant are attached as Exhibit E.

58.     The purchase of the infringing watches from the Defendant took place at

21 Southeast First Avenue 4th Floor Miami Florida 33131.This is an unauthorized retail

location that could never satisfy Plaintiffs' established criteria for appointment as an

authorized retailer.

59.     The watches purchased from Defendant New City Inc. contain a number

of SWATCH Marks.

60.     Each and every one of the SWATCH brand watches purchased from

Defendant were materially altered.

61.     All marking and information that provide Plaintiffs with product specific

information such as origin and source were destroyed, removed, and/or materially altered

prior to purchase from Defendant.

62.     Each warranty for each watch purchased from Defendant was destroyed

and/or materially altered.

63.     Defendant does not disclose to its customers that the goods bearing the

SWATCH Marks have been altered. Indeed, Defendant sells such goods as though they

13

are in their original condition as made by the manufacturer in Switzerland when in fact
they are not.

64.     Defendant sells goods bearing the SWATCH Marks from a showroom in
bulk.

65.     In order for a customer to enter the showroom one has to be buzzed in.

66.     Upon information and belief Defendant requires a full payment in cash
prior to supplying watches to a purchaser.

67.     Defendant's inventory is sporadic and not attractively displayed.

68.     The atmosphere and decorum of the New City Inc. supply site dilutes and
tarnishes the image of the SWATCH Marks.

69.     Defendant is fully aware that it is not authorized to sell or distribute
SWATCH brand products in the United States.

70.     The goods sold by Defendant include copies of works which are
protectible under copyright law.

71.     All of the SWATCH Copyrights sold by Defendant were created in
Switzerland.

72.     Defendant has not been authorized or permitted to sell, copy, or import
copies of the SWATCH Copyrights in the United States.

73.     Defendant's unauthorized sale, importation, or copying of SWATCH
Copyrights  deprives Plaintiffs of their exclusive right to the first sale of such copies in
the United State.

## COUNT I

## TRADEMARK INFRINGEMENT

74.     Plaintiffs restate and re-aver each and every allegation contained in paragraphs 1-73, inclusive of this Complaint and the acts of Defendants asserted therein as if fully recited in this paragraph.

75.     Federal registration of a trademark is *prima facie* evidence of a Registrant's exclusive right to use the registered trademark in commerce in connection with the goods or services specified in the certificate, pursuant to 15 U.S.C. §1057(b).

76.     Without the authorization from Plaintiffs, Defendant has imported and placed for sale a variety of SWATCH brand watches bearing SWATCH Marks in the United States.  If Defendant did not directly import the SWATCH brand watches into the United States, then Defendant is part the chain of distribution of the unlawfully imported and distributed SWATCH brand watches and contributory liable for same.

77.     Without authorization from Plaintiffs, Defendant has also in fact sold numerous watches bearing a number of SWATCH Marks.

78.     Defendant sells Plaintiffs' goods bearing SWATCH Marks in a manner that is materially altered.   Additionally, Defendant sells products bearing the SWATCH Marks as authorized products which differ materially from the authorized products.

79.     Defendant also sells Plaintiffs' goods that would normally bear the SWATCH warranty without the warranty intact.  Defendant attempts to "supply" a warranty from the Plaintiffs which misleads consumers by affirmatively claiming the products are covered under Swatch's warranty.

80.     Defendant is fully aware it has materially altered or destroyed the warranty for each of the watches it has sold.  A copy of Defendant's destroyed and/or altered warranty is attached hereto as Exhibit F.

81.     Defendant sells SWATCH brand goods bearing the SWATCH Marks without any disclosure of this material alteration to Plaintiffs' warranty, either on the goods or in the packaging.

82.     Defendant fails to fully disclose that it has altered and /or destroyed the warranty on Plaintiffs' goods bearing the SWATCH Marks.

83.     Defendant fails to disclose the differences between this altered and/or destroyed warranty and the original manufacturer's warranty offered by Plaintiffs that accompany the authorized sale of goods bearing the SWATCH Marks.

84.     Defendant's failure to disclose the altered and/or destroyed warranty causes both point-of-sale and post-sale consumer confusion.

85.     Defendant's failure to disclose material alteration and/or destruction  of the warranty and thereby dilutes and tarnishes the SWATCH Marks.

86.     The unauthorized importation and sale of Plaintiffs' products confuses consumers as to the source, nature or approval for the sale of Plaintiffs' products, and misleads the consumers into believing that the trademark owner had approved of the watches for sale by Defendant.

87.     Defendant's destruction of the warranty constitutes a material alteration of Plaintiffs' goods. Therefore goods bearing the SWATCH Marks which are sold by Defendant are not genuine.

88.     Defendant is fully aware that they are not authorized importers or distributors or dealers and that it has not purchased these goods from the trademark owner or one with authorization to resell such goods in the United States.

89.     Defendant has continued to unlawfully import and infringe the SWATCH Marks and have no intention to cease and desist such infringing activities and have acted willfully.

90.     All of Defendant's acts were performed without the consent, permission, license, or authorization of the Plaintiffs. The acts alleged against Defendant herein constitute trademark infringement.

91.     Defendant's acts of trademark infringement, as alleged above, have caused Plaintiffs to suffer damages and Plaintiffs will continue to suffer substantial damages as a result of Defendant's misappropriation of the Plaintiffs' exclusive rights to use, import, distribute, reproduce and otherwise exploit the SWATCH Marks.

92.     Defendant's acts of trademark infringement as alleged above are causing Plaintiffs and the public irreparable injury, and will continue to do so unless restrained and enjoined.

93.     Defendant's ongoing and unlawful use of SWATCH Marks damages the Plaintiffs and will, without an injunction prohibiting such acts in the future, further irreparably harm Plaintiffs and irreparably damage the value of the SWATCH Marks and the associated goodwill.

94.     Defendant's actions enable them and others to misrepresent and deceptively advertise, merchandise, market, display and promote Defendant's products

and services as emanating from Plaintiffs or as legitimately related to Plaintiffs when they are not.

95.    On information and belief, Defendant has no present intention of terminating the activities complained of but, on the contrary, are continually seeking to expand such activities.

96.    Defendant's willful acts of trademark infringement justify the award of actual damages for each act of infringement of Plaintiffs' SWATCH Marks in a total amount which may only be ascertained by discovery of the Defendant's business and financial records, together with costs and attorneys' fees.  Alternatively, Plaintiffs are entitled to the actual damages incurred as a result of Defendant's infringement plus any additional profits of Defendant attributable to the acts of infringement, together with costs and attorneys' fees.

**COUNT II**
**COMMON LAW TRADEMARK INFRINGEMENT**

97.    Plaintiffs restate and reaver each and every allegation contained in paragraphs 1-96, inclusive, as if fully recited herein.

98.    This Count arises under the Common Law of Trademark Infringement and Unfair Competition.

99.    Plaintiffs' trademarks and trade dress, as currently used on watches, have become well and favorably known throughout the United States and the World, including the State of Florida, and have acquired a distinctiveness and secondary meaning signifying the Plaintiffs and Plaintiffs' products, representing a most valuable goodwill owned by Plaintiffs.

100.     Defendant's unauthorized use of the SWATCH Marks constitutes Common Law Unfair Competition and Common Law Trademark Infringement, and such further actions will lead to the erroneous belief that Defendant's products originate with, or are sponsored by Plaintiffs, thereby enabling Defendant to misappropriate and unfairly trade upon Plaintiffs' valuable goodwill and reputation, and further will subject Plaintiffs' goodwill and reputation in its trademarks and trade dress to the perils and hazards arising out of Defendants' business activities, over which Plaintiffs have no control.

## COUNT III
## UNFAIR COMPETITION UNDER THE LANHAM ACT

101.     Plaintiffs repeat and reaver each and every allegation contained in paragraphs 1 -100, inclusive, as if fully recited herein.

102.     Defendant engages in unfair competition by using the Plaintiffs' copyrighted works, trademarks, product designs and distinctive trade dress, while at the same time giving the impression to the consumer that such conduct is in some way lawful, even though they are not authorized to import and sell Plaintiffs' goods and works or use Plaintiffs' SWATCH Marks.  Defendant's wrongful acts cause consumers to falsely believe that Defendant's conduct is in some way endorsed by Plaintiffs when they are not.  Consumers are thereby confused, mistaken or deceived as to the nature of the goods which they purchase.

103.     Defendant also deceive consumers by failing to fully disclose the change in warranty, thereby inadequately informing consumers of the nature and quality of the goods offered for sale and sold by Defendant.

19

104.     Consumers are thereby damaged as a result of the Defendant's misrepresentation of the products' warranty.  Defendant deceives consumers as to the affiliation and endorsement of Defendant's actions through false or misleading representation of fact.

105.     The above practices represent false designations of origin and unfair competition as proscribed by 15 U.S.C. § 1125 (a).

106.     Plaintiffs are harmed by Defendant's conduct and practices.

**COUNT IV**
**COMMON LAW UNFAIR COMPETITION**

107.     Plaintiffs restates and reavers each and every allegation contained in paragraphs 1-106, inclusive of this Complaint and the acts of Defendant asserted therein as if fully recited in this paragraph.

108.     The Plaintiffs' trademarks have become well and favorably known throughout the United States, including the State of Florida.

109.     Defendant engages in unfair competition by unlawfully importing, altering, distributing false advertising, offering for sale, selling and using Plaintiffs' trademarks and copyright without authorization that are contained in Plaintiffs' SWATCH brand products, which include protected marks, copyrights, trade dress and marketing and advertising materials.

110.     Defendant's deliberate and concerted adoption and use of substantial portions of the Plaintiffs' SWATCH brand products including protected marks, copyright, trade dress and marketing and advertising materials, and use of the Plaintiffs' Trademarks is likely to cause confusion, mistake or deception by virtue of Defendant's

false representation to the trade and public that such material is that of the sold by the Defendant is sanctioned by the Plaintiffs.

111.    Defendant's unauthorized sale, distribution and alteration of this trademarks materials is likely to confuse and mislead consumers and the public, and to induce the mistaken belief that Defendant is associated or authorized by the Plaintiffs, or that the Defendant's marketing, sale and advertising content is endorsed or sponsored by Plaintiffs or in some way connected with Plaintiffs. This confusion is likely to influence the decision of consumers and others. In addition, Defendant's unauthorized use of Plaintiffs' trademarks to attract and secure business from consumers is harmful to Plaintiffs in that Plaintiffs suffers the loss of this business, dilution of its intellectual property and warranty policies.

112.    Defendant's unauthorized use of the Plaintiffs marks and copyrights constitutes Common Law Trademark Infringement and Common Law Unfair Competition.

113.    Defendant's sale, alteration and distribution of the Plaintiffs intellectual property, marketing and advertising materials are likely to cause confusion, mistake or deception by virtue of Defendant's False Advertising which leads the public to believe that such material is being used by Defendant with Plaintiffs approval, and that Defendant's goods are those of the Plaintiffs, or sponsored by or affiliated with the Plaintiffs.

114.    By reason of Defendant's acts of Unfair Competition, copyright infringement, trademark infringement and false designation of origin, as alleged above, Plaintiffs has suffered and will continue to suffer substantial damage to its business in the

form of diversion of trade, loss of profits, loss of goodwill, and damage to reputation, all in amounts which are not yet fully ascertainable.

115.    Unless restrained and enjoined, Defendant's acts of Unfair Competition as alleged above will cause Plaintiffs, ongoing, irreparable injury.

**COUNT IV**
**FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING UNDER THE LANHAM ACT**

116.    Plaintiff restates and reavers each and every allegation contained in paragraphs 1-115 inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

117.    This count arises under 15 U.S.C. §1125(a).

118.    Defendants have used the SWATCH Marks in a manner which is likely to cause confusion, mistake or deception, by virtue of its prominent use thereof in connection with Defendant's goods and services.

119.    Defendant's use and/or association with its SWATCH Marks represents a False Designation of Origin, as consumers are likely to associate Defendant's goods and services  with the Plaintiffs SWATCH Marks  and its well known and highly regarded use of its marks as an indicator of source, quality and consistency.

120.    Consumers will believe that Defendant's goods and services in conjunction with the infringing SWATCH Marks is associated with, sponsored and/or endorsed by the Plaintiffs when in fact they are not.

121.    Defendant's  unauthorized use of Plaintiffs SWATCH Marks and Copyrights erodes the connection between Plaintiffs marks as being the single source for Plaintiffs goods and services offered under such marks.  The Plaintiffs' reputation has

22

thus been and will continue to be subject to the perils and hazards which arise from Defendant's tortuous activities, resulting in grave irreparable harm to Plaintiffs and the consuming public.

122.   Defendant has no connection whatsoever with the Plaintiffs and Plaintiffs have no control over the acts of Defendant, nor any responsibility for the acts of Defendant.

123.   Defendant's acts create and further the likelihood that the public will be confused as to sponsorship, source, affiliation or association of the products and services of Defendant.

124.   Defendant's use and/or association with Plaintiff's marks constitute a false designation of origin, as consumers are likely to associate Plaintiffs marks with Defendant.

125.   Defendant's use of the SWATCH Marks constitutes false advertising to lead consumer to believe that Defendant's goods originate from or are authorized by the Plaintiffs when in fact they do not.

## COUNT  V
## TRADEMARK DILUTION UNDER THE LANHAM ACT

126.   Plaintiffs  restate and re-aver each and every allegation contained in paragraphs 1-125 inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

127.   This count is for Dilution under 15 USC 1125(c) of Plaintiff's rights in the SWATCH Marks.

23

128.    The SWATCH marks, as alleged above, are famous marks.  The SWATCH Marks have become distinctive and are uniquely associated by consumers with the Plaintiffs and Plaintiffs' goods and services.

129.    Plaintiffs' SWATCH Marks are renowned in the relevant industries.

130.    Plaintiffs' SWATCH Marks are famous.

131.    Defendant's  use of the Plaintiffs' SWATCH Mark dilutes and tarnishes the distinctive quality of the Plaintiffs SWATCH Marks, confusing consumers and damaging the Plaintiffs, in violation of 15 USC § 1125(C).

132.    Plaintiffs are damaged by such dilution and tarnishment.

## COUNT VI
## COPYRIGHT INFRINGEMENT

133.    Plaintiffs restate and reaver each and every allegation contained in paragraphs 1-132, inclusive of this Complaint and the acts of Defendants asserted therein as if fully recited in this paragraph.

134.    This count is for unlawful infringement, under 17 U.S.C. §§ 106 and 602, of Plaintiffs' copyrights.  Each of the relevant copyrights were created outside the United States in Switzerland.

135.    Plaintiffs own all the SWATCH Copyrights as embodied in the products sold by Defendant.  Registration of the SWATCH Copyrights is not a prerequisite to this claim for copyright infringement because all such works were created outside the United States in Switzerland.

24

136.    The copyrighted materials contain material wholly original to Swatch and for which Swatch is the author and which copyrightable subject matter is under the laws of the United States.

137.    With full knowledge of the rights of Plaintiffs therein, Defendant has infringed the Plaintiffs' copyright by displaying, importing, publishing, selling and distributing the copyrights.

138.    Without the authorization of Plaintiffs, Defendant has imported unauthorized copies of material protected by   the SWATCH Copyrights into the United States.  Alternatively, if Defendant did not directly import the unauthorized copies of the SWATCH Copyrights into the United States, then Defendant is part of the chain of distribution of the unlawfully imported and distributed copies of the SWATCH Copyrights thus depriving the Plaintiffs of their statutory right to first sale in the United States.

139.    Upon information and belief, Defendant is fully aware that they imported these copies into the United States without authorization from the copyright owner and that Defendant's offering for sale, advertising and sale of these copies in the United States is without authority by Plaintiffs.  The acts alleged above against Defendant constitute copyright infringement in violation of 17 U.S.C. § 106 and 602.

140.    Upon information and belief, Defendant has continued to infringe the copyright and have no intention to cease and  desist such infringing activities and have acted willfully.

141.    All of Defendant's acts were performed without the consent, permission, license, or authorization of the Plaintiffs.

142.     Defendant's acts of copyright infringement, as alleged above, have caused Plaintiffs to suffer damages and Plaintiffs will continue to suffer substantial damages as a result of Defendant's misappropriation of the Plaintiffs' exclusive rights to use, import, distribute, reproduce and otherwise exploit its copyrighted works.

143.     Defendant's acts of copyright infringement as alleged above are causing Plaintiffs and the public irreparable injury, and will continue to do so unless restrained and enjoined.

144.     Defendant's willful acts of copyright infringement justify the award of the maximum measure of statutory damages against it – namely, One Hundred and Fifty Thousand Dollars ($150,000) – for each act of infringement of Plaintiffs' copyright in a total  amount which may only be ascertained by discovery of the Defendants' business and financial records, together with costs and attorneys' fees.  Alternatively, Plaintiffs are entitled to the actual damages incurred as a result of Defendants' infringement and any additional profits of Defendants attributable to the acts of infringement, together with the costs and attorneys' fees.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by a Jury on all issues triable by right of Jury.

**WHEREFORE**, Plaintiffs pray:

1.     That pursuant to 15 U.S.C. §1116 and the equity jurisdiction of this Court, Defendant and their officers, agents, employees, representatives, and all persons in privity therewith be preliminarily and permanently enjoined and restrained from using on

or in connection with the importation, sale, offering for sale, distribution, exhibition, display or advertising of goods or services through the Internet or otherwise, any SWATCH marks and copyrights and trade dress;

2.     That Defendants and their officers, agents, employees, or representatives, and all persons in privity them be preliminarily and permanently enjoined and restrained from destroying, secreting or altering, and ordered to deliver up this Court for the purposes of destruction thereof, pursuant to 15 U.S.C. §1118, all dyes, molds, letterheads, advertising materials, computer programs in any language or format (including HTML, Java or other formats for use in internet web pages), labels, packages, containers, name plates, watches and any other printed or electronic matter of any nature, and any products in their possession bearing any SWATCH Marks, Copyrights and trade dress utilized by Plaintiffs, either alone or in combination with other words or symbols, or any colorable imitation;

3.     That pursuant to 15 U.S.C. §1117, Defendant be directed to pay over to Plaintiffs any and all damages which they have sustained by consequence of Defendant's statutory and Common Law Trademark Infringement, and Unfair Competition as enumerated herein;

4.     That pursuant to 15 U.S.C. §1117, Defendant be directed provide Plaintiffs an accounting of all profits that they have obtained by consequence of Defendant's statutory and Common Law Trademark Infringement, and Unfair Competition as enumerated herein;

5.     That pursuant to 17 U.S.C. §504, that Defendant be found liable to Plaintiffs for infringement of its copyrights in the SWATCH brand products in an amount

equal to, at Plaintiffs' election: (a) statutory damages of up to thirty thousand dollars ($30,000) for each infringement of Plaintiffs' copyright, in an amount to be determined by the Court; or alternatively at Plaintiffs' election (b) the actual damages suffered by Plaintiffs as a result of Defendants' infringement of Plaintiffs' copyright, plus any profits of Defendant attributable to such infringement and Plaintiffs' fees and costs.

6.      That Defendant's copyright infringement be found willful and their liability to Plaintiffs for such infringement be enhanced up to one hundred and fifty thousand dollars ($150,000) per infringement, should Plaintiffs elect to recover statutory damages in lieu of its actual damages and the Defendants' profits.

7.      That Defendant be required to account for and pay over all gains, profits, and advantages derived by Defendant and any damages sustained by Plaintiffs as a result of their infringement of Plaintiffs' copyright, as set forth herein.

8.      That pursuant to 17 U.S.C. §502 and the equity jurisdiction of this court, the Defendant, its agents, employees, or representatives, and all persons in privity therewith be permanently enjoined and restrained from using on or in connection with the sale, offering for sale, distribution, exhibition, display or advertising of its goods through the Internet or otherwise, from infringing Plaintiffs' SWATCH brand Marks and Copyrights  in any manner, and from publishing, selling, marketing, or otherwise disposing of any copies of Defendant's material which have been derived in any manner by infringement of Plaintiffs' Marks and Copyrights.

9.      That Defendant and their officers, agents, employees, or representatives, and all persons in privity with Defendant not destroy but deliver up to this Court for the purpose of destruction thereof, pursuant to the copyright laws of the United States, 17 USC § 101 et

seq., any products in their possession bearing the copyrighted materials of the Plaintiffs or any colorable imitation;

10.     That Defendant and their officers, agents, employees, or representatives, and all persons in privity with Defendant be required to file with this Court and serve upon Plaintiffs a report in writing and under oath setting forth in detail the manner and form in which the Defendant has complied with the terms of the injunction.

11.     That, because of the willful nature of the infringements, the amounts of actual damages be trebled as provided for in 15 U.S.C. § 1117.

12.     That, pursuant to 17 U.S.C. § 505 and 1117(a), Defendant be required to pay to Plaintiffs the costs of this action, including attorneys' fees and disbursements incurred.

13.     Any such other and further relief as this Court deems just and equitable.

Respectfully submitted
for Plaintiffs,

By: _____

John Cyril Malloy, III
Florida Bar No. 964220
Andrew W. Ransom
Florida Bar No. 964,344
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone: (305) 858-8000
Facsimile: (305) 858-0008
Email: wransom@malloylaw.com

and

Jess M. Collen (JC-2875)
Matthew C. Wagner (MW-9432)
Jacqueline M. James (JJ-1845)
COLLEN *IP*
The Holyoke-Manhattan Building
80 South Highland Avenue
Town of Ossining
Westchester County, New York 10562
Telephone:  (914) 941 5668
Facsimile:   (914) 941-6091

Dated: January 23, 2006

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

06-20162

**I. (a) PLAINTIFFS**

SWATCH S.A. a/k/a SWATCH A.G.; and
THE SWATCH GROUP (U.S..) Inc.,

**DEFENDANTS**

NEW CITY INC.

MAGISTRATE JUDGE
SIMONTON

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _Switzerland_
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _Miami-Dade_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

NIGHT BOX
FILED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
John Cyril Malloy, III - MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue, Miami, FL 33139
Tel. (305) 858-8000

ATTORNEYS (IF KNOWN)

JAN 20 2006

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE HIGHLANDS

Docket:06CV20162|HUCK|AMS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | X☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DWC/DWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

15 U.S.C. SS 1114 and 1125 Trademark Infringement, Unfair Competition, Dilution,
17 U.S.C. SS 106 and 602 Copyright Infringement

LENGTH OF TRIAL via _5_ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**   CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

**DEMAND $** Unspecified

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S)** (See instructions):
**IF ANY**        JUDGE _____        DOCKET NUMBER _____

DATE 1/20/06        SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 933743   AMOUNT $255.00   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

01/23/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# ATTACHMENT(S) NOT SCANNED

## PLEASE REFER TO COURT FILE MAINTAINED IN THE OFFICE WHERE THE JUDGE IS CHAMBERED

### CASE NO. *06-20162-CV-PCH*
### DE# *1*

☐ **DUE TO POOR QUALITY, THE ATTACHED DOCUMENT IS NOT SCANNED**

_____

☐ VOLUMINOUS (exceeds 999 pages = 4 inches)
  consisting of (boxes, notebooks, etc.)_____

☐ BOUND EXTRADITION PAPERS

☐ ADMINISTRATIVE RECORD (Social Security)

☐ ORIGINAL BANKRUPTCY TRANSCRIPT

☐ STATE COURT RECORD (Habeas Cases)

☐ SOUTHERN DISTRICT TRANSCRIPTS

☐ LEGAL SIZE

☐ DOUBLE SIDED

☒ PHOTOGRAPHS

☐ POOR QUALITY (e.g. light print, dark print, etc.)

☐ SURETY BOND (original or letter of undertaking)

☐ CD's, DVD's, VHS Tapes, Cassette Tapes

☐ OTHER = _____